[S. F. No. 7938. In Bank.—August 28, 1919.]

# AUGUSTUS DAVID PRATT, Respondent, v. B. B. ROSENTHAL et al., etc., Appellants.

[1] MUNICIPAL CORPORATIONS—SAN FRANCISCO CHARTER—BOARD OF HEALTH — CIVIL SERVICE COMMISSION — INDEPENDENT BODIES — QUALIFICATIONS OF CIVIL SERVICE ELIGIBLES.—Under the charter of the city and county of San Francisco, the board of health and the Civil Service Commission are independent bodies with respect to their powers, and the former has no authority to invade the province of the latter by determining, contrary to the rules and decisions of the commission, the qualifications or capacity of the persons to be entered on the list of eligibles in the classified civil service.

[2] ID.—CIVIL SERVICE COMMISSION—EXERCISE OF POWERS—WIDE DISCRETION.—Under the charter of the city and county of San Francisco, the Civil Service Commission has a wide discretion with regard to the manner of performing its duties and exercising its powers.

[3] ID.—HOLDING OF CIVIL SERVICE EXAMINATION—INJUNCTION—METHOD—PLEADING.—In an action to enjoin the Civil Service Commission from holding an examination, the court cannot assume that the proposed method of holding the examination is impracticable, in the absence of some affirmative fact showing the impracticability, as a matter of law.

[4] ID.—EXAMINATION FOR MARKET INSPECTORS — QUALIFICATIONS — EXPERIENCED VETERINARIANS AND MEAT HANDLERS—EQUAL RATING —DISCRETION NOT ABUSED.—The Civil Service Commission of the city and county of San Francisco in providing for an examination for market inspectors did not abuse its discretion in providing that a given number of years of experience as a veterinarian should be equal, for grading an applicant, to a like number of years' experience in the handling of meats, fish, and fowl, and that graduation should equal three years' experience.

[5] ID.—NOTICE OF CIVIL SERVICE EXAMINATION—OBTAINING COPIES OF REGULATIONS OF BOARD OF HEALTH.—The statement in a civil service examination notice for market inspectors that applicants could obtain copies of the regulations of the board of health from the commission so long as its supply held out was not a violation of section 18 of article XIII of the charter of the city and county of San Francisco, since it is to be presumed that the printed regulations of the board could be obtained from the board itself, or, if not, that any applicant could examine the same by demanding an inspection of the record thereof.

[6] ID.—DEDUCTIONS ON ACCOUNT OF INSUFFICIENT EXPERIENCE—
STATEMENT IN NOTICE—INSUFFICIENT GROUND FOR INJUNCTION.—
The provision in a civil service examination notice that deductions
would be made if the experience shown was not considered first
class is not sufficient to authorize an injunction to restrain the hold-
ing of the examination, without showing that the commission is
threatening to abuse its discretionary powers.

APPEAL from a judgment of the Superior Court of the
City and County of San Francisco. J. J. Van Nostrand,
Judge. Reversed.

The facts are stated in the opinion of the court.

George Lull, City Attorney, Joseph T. Curley and Maurice
T. Dooling, Jr., Assistant City Attorneys, for Appellants.

Edward F. Moran for Respondent.

SHAW, J.—The case is stated in the following part of the
opinion rendered therein by the district court of appeal of
the first district:

"Plaintiff brought an action, as taxpayer, against the Civil
Service Commissioners of the city and county of San Fran-
cisco, alleging in his complaint that prior to the bringing of
the action the Civil Service Commissioners classified for pur-
poses of examination certain places of employment in the de-
partment of public health, which places were designated as
market inspectors. The complaint further alleged that prior
to the institution of the action the board of health adopted
the following regulations governing the inspection of meat-
food products:

" 'Section 1. All employees of the Department of Health
engaged in the work of meat inspection shall be appointed
from eligibles certified by the Civil Service Commission, and
such employees include Veterinary Inspectors, Market In-
spectors, Inspectors' Assistants, Patrolmen and Skilled Labor-
ers.

" 'Section 2. Veterinary Inspectors. All applicants exam-
ined for these positions must be graduates of recognized Vet-
erinary Colleges having a course of not less than three years
leading to the degree. All final *ante-mortem* and *post-mortem*
examinations are conducted by veterinarians. At establish-

ments where slaughtering is conducted only veterinary inspectors shall be placed in charge.

" 'Section 3. Market Inspectors. These employees are laymen experienced in the curing, canning, packing, or otherwise preparing of meat; they shall supervise the work and the use of permitted preservatives, specially set forth in Regulation No. 21 of these regulations.'

"The complaint further alleged that the Civil Service Commission gave notice that on Saturday, January 15, 1916, said commission would hold an examination of applicants for positions as market inspectors on the subjects, general knowledge of duties, writing of report and experience. The said notice was as follows:

" ' "General Knowledge of Duties" will cover the laws and ordinances pertaining to abbatoirs, packing houses, meat markets, sausage factories, etc., the inspection of meats, fish and fowl, and general duties of a market inspector. (The Commission has a limited supply of the regulations of the Board of Health governing meat inspection and while the supply lasts a copy of the regulations will be given to each person filing an application. A copy of the questions asked in the last examination held for this class also will be given to each applicant.)

" ' "Writing of Report" will be a test of the applicant's ability to write a correct report upon a subject to be named by the Civil Service Commission.

" 'The subject "Experience" will be rated as follows: five years' first-class experience had within the last 8 years as a veterinarian or in the handling of meats, fish and fowl, 100 credits; 4½ years, 95 credits; 4 years, 90 credits; 3½ years, 85 credits; 3 years, 80 credits; less than 3 years and intermediate periods will not be rated. Deductions will be made when the experience is not considered first-class. Experience had prior to January 15, 1908, will not be rated. Proof of graduation as a veterinarian will be considered equal to 3 years' first-class experience.'

"It was alleged in the complaint that the holding of said examination by defendants would be in excess of their powers and jurisdiction as civil service commissioners and contrary to the procedure and limitations prescribed for the conduct of civil service examinations in the San Francisco charter; and that in conducting said examination certain indebtedness

would be incurred against the city by reason of the employment of help to assist the commission in the examination. The defendants interposed a general demurrer to the complaint, which the court overruled, and upon the defendants' refusing to answer further to the complaint, the court ordered judgment for the plaintiff restraining the defendants, as civil service commissioners, from holding an examination for market inspectors pursuant to the provisions of the charter of the city and county of San Francisco."

The charter of San Francisco provides that the Civil Service Commissioners "shall classify, in accordance with duties attached thereto, all places of employment in or under the offices and departments of the city and county" (sec. 2, art. XIII, Stats. 1913, p. 1611), and that the examinations to be conducted by said commission "shall be public, competitive and free. Such examinations shall be practical in their character, and shall relate to those matters only which will fairly test the relative capacity of the persons examined to discharge the duties of the positions to which they seek to be appointed, and shall include, when appropriate, tests of physical qualifications, health, and of manual or professional skill." (Sec. 4, art. XIII, Stats. 1899, p. 350.) With respect to the board of health, the charter provides for the appointment of a board of seven members and declares that "the board may appoint such officers, agents and employees as may be necessary for the proper and efficient carrying out and enforcement of the purposes and duties of the board, and may fix their salaries and prescribe their duties." (Sec. 5, art. X, Stats. 1899, p. 343.) The duties of the board of health, generally stated, are to manage and control all matters pertaining to the preservation, promotion and protection of the lives and health of the inhabitants of the city and county, provide for the abatement of nuisances, supervise the sanitary condition of municipal institutions and buildings, the disposition of the dead, the disposition of garbage, offal, and other offensive substances, and to enforce all ordinances, rules and regulations of the board of supervisors for said purposes. It also provides that the board of health shall, from time to time, submit to the board of supervisors a draft of such ordinances, rules and regulations as it deems necessary to promote the objects for which the health board is established. (Secs. 3, 4, art. X, Stats. 1899, p. 343.) The regulations of the board of health

above quoted were adopted under the authority of these provisions of the charter. The Civil Service Commission is further empowered to make rules for the examination of persons to be employed in the service of the city (sec. 3, art. XIII), to control all examinations (sec. 5, art. XIII) and to give in a prescribed manner, "notice of the time, place and general scope of every examination." (Sec. 6, art. XIII.) The aforesaid notice of examination was given in pursuance of these powers.

It is contended by the plaintiff that in providing that a given number of years of experience as a veterinarian should be equal, for grading an applicant for employment, to a like number of years' experience in the handling of meats, fish, and fowl, and that graduation should equal three years' experience, the commission exceeded the scope of its powers and duties under the charter, that the board of health had determined that market inspectors should be "laymen experienced in the curing, canning or packing or otherwise preparing of meat," and that the commission had no authority to substitute for these qualifications any number of years of experience or graduation as a veterinarian.

In making the appointment of a market inspector the board of health is required to select the appointee from a list furnished by the Civil Service Commission, taken from those who have been examined, approved and classified by the commission. (Art. XIII, secs. 7–10, Stats. 1913, p. 1613; Stats. 1899, p. 351.) It may be conceded that the board of health has discretion in selecting the person appointed from the list furnished. But the board has no supervisory power over the proceedings of the commission in the matter of making examinations classifying the persons who pass, or in furnishing the list. It is not empowered to make regulations which shall control the commission in ascertaining the relative capacity of the persons examined for the eligible list or the tests it will apply in so doing. These matters the charter commits exclusively to the commission. It follows that while the board of health may make regulations concerning the qualifications of its appointees, and may apply such regulations in making its appointments, so far as the charter permits in selecting from the list of eligibles furnished to it by the commission, it can do no more, and the regulations the board may make respecting such qualifications or capacity, have no effect what-

ever on the powers of the commission and cannot be considered as a limitation thereof. If the regulations of the board were intended to limit or affect those powers, or to give the board any power additional to that just mentioned, they were in excess of the powers of the board, and it is the board, and not the commission, that has exceeded its powers. [1] The two bodies are independent of each other with respect to their powers. Each derives its power and authority from the charter and neither is given authority to modify the duties of the other, except as the charter may provide. No authority is given to the board to invade the province of the commission by determining, contrary to the rules and decisions of the commission, the qualifications or capacity of the persons to be entered on the lists of eligibles in the classified civil service. The commission is not exceeding its powers in the particulars mentioned.

The plaintiff further contends that the scope of the examination as declared in the above-quoted notice is not "practical" within the meaning of the charter (sec. 4, art. XIII), that by giving the experience of laymen in the actual work of handling meats, fish, and fowl no greater, indeed less, weight than the experience of a veterinarian who has never done such work, the commission has exceeded its power, and that by including in its notice the statement that they had a limited supply of the regulations of the board of health and would furnish them to applicants so long as that supply lasted, thereby implying that they would not furnish them thereafter, the commission has violated the provisions of section 18 of article XIII of the charter. The latter section provides that no person or official shall "furnish to any person any special or secret information for the purpose of either improving or injuring the prospects or chances of any person of being appointed, employed or promoted."

[2] It is a well-established proposition that a commission with the powers conferred upon the Civil Service Commission in the examination of applicants for public employment has a wide discretion with regard to the manner of performing its duties and exercising its powers. "Where the position is one as to the proper mode of filling which there is fair and reasonable ground for difference of opinion among intelligent and conscientious officials, the action of the commission should stand, even though the courts may differ from the commission

as to the wisdom of the classification. In other words, if the classification of the commission clearly violates the constitution or the statute, *mandamus* should issue to correct the classification. If the action of the commission is not palpably illegal, the court should not intervene.'' (1 Dillon on Municipal Corporations, 5th ed., pp. 700, 701.) This court has said in a case involving the powers and duties of the San Francisco Civil Service Commission: ''Courts should let administrative boards and officers work out their problems with as little judicial interference as possible. They may decide a particular question wrong—but it is their question. Such boards are vested with a high discretion and its abuse must appear very clearly before the courts will interfere.'' (*Maxwell v. Civil Service Com.*, 169 Cal. 339, [146 Pac. 871].) No facts are presented in the complaint which even tend to indicate that the method of holding the examination as outlined in the notice thereof above quoted is not practical. [3] The courts are certainly not at liberty to assume that it is not practical, in the absence of some affirmative fact showing that, as a matter of law, it is impractical. The same reasons apply with equal force to the complaint that the commission has placed a veterinarian on the same plane as one experienced in the handling of meats, fish, and fowl. [4] We cannot say that the commissioners abused their discretion in concluding that a person with the prescribed experience as veterinarian might be as well qualified to supervise the work of canners, curers, packers, and preparers of meat and to inspect meat and meat products on sale as one of actual experience in the handling of meats, fish, and fowl. [5] The statement in the notice informing applicants that they could obtain copies of the regulations of the board of health from the commission so long as its supply held out does not appear to us to be a violation of section 18 of article XIII of the charter. It is to be presumed that the printed regulations of the board of health could be obtained from the board itself, or, if not, that any applicant could examine the same by demanding an inspection of the record thereof. They could not, lawfully, be kept secreted from such applicants.

[6] The point that the provision in the notice that deductions would be made if the experience shown was not considered first class would authorize an abuse of the discretionary powers of the commission seems to us to be without force.

Obviously, it would be the duty of the commission to determine the nature of the experience shown to be possessed by the applicant, and if they did not consider it first class they should take due weight of that fact in giving to the applicant a certificate of qualification. Any power may be abused. But to enjoin its exercise on that ground, without showing that the abuse is threatened and imminent, would defeat a lawful grant of power, a thing not to be done by the courts. We find no ground upon which the complaint can be held to be sufficient to justify an injunction. The court below erred in overruling the demurrer.

The judgment is reversed.

Lennon, J., Wilbur, J., Olney, J., Melvin, J., Lawlor, J., and Angellotti, C. J., concurred.