[Civ. No. 5148. First Appellate District, Division One.—December 31, 1926.]

THEO. C. HAUB, Respondent, v. HIRAM D. TUTTLE et al., as Members, etc., of the Civil Service Commission of the City of San Jose, Appellants.

[1] MUNICIPAL CORPORATIONS — CIVIL SERVICE — EXAMINATIONS FOR PROMOTION—SAN JOSE CHARTER—CONSTRUCTION.—The power of the Civil Service Commission of the city of San Jose to determine eligibility for promotion is granted by section 106 of the charter of said city, to be exercised within the limitations thereof, but under rules and regulations adopted and approved pursuant to section 104 of said charter; and the provisions of section 105 apply only to original appointment and employment

in the service, the distinction between original appointments and promotions being further emphasized by section 107.

[2] ID. — SAN JOSE CHARTER — STATUTORY CONSTRUCTION.—To adopt the construction that section 105 of the charter of San Jose, like section 106, was designed to cover the matter of promotions in the classified civil service would be to render the enactment of section 106 unnecessary and surplusage, which may not be done in view of the rule of statutory construction that some effect, if possible, must be given to every word, and certainly to every distinct provision of an act.

[3] ID.—ELIGIBILITY FOR PROMOTION—COMPETITIVE EXAMINATIONS—AUTHORITY OF CIVIL SERVICE COMMISSION.—The provisions of section 106 of the charter of San Jose do not authorize the Civil Service Commission of that city to base its determination of eligibility for promotions upon competitive examinations.

[4] ID.—CIVIL SERVICE COMMISSION—EXERCISE OF POWERS.—A Civil Service Commission derives its power from the charter creating it, and may not exercise any power not directly given or necessarily implied from the prerogatives thus conferred.

[5] ID.—APPOINTMENTS IN CLASSIFIED SERVICE—RULES AND REGULATIONS—EFFECT OF—SAN JOSE CHARTER.—The fact that section 105 of the charter of the city of San Jose contains the only charter provision granting power to the city manager to make appointments in the classified service does not make section 106 of the charter dependent upon the provisions of section 105 to be operative, it being provided by section 104 that the Civil Service Commission shall adopt, subject to the approval of the council, a code of rules and regulations providing for appointment in the classified service which shall have the force and effect of law.

[6] ID. — EXERCISE OF POWERS IN EXCESS OF AUTHORITY BY CITY OFFICERS — GRANT OF AUTHORITY — PRESUMPTIONS. — The exercise of powers by city officers in excess of their authority for a great length of time will raise no presumption of a grant to the city of such authority.

[7] ID.—APPLICANTS FOR PROMOTION—PHYSICAL AND MENTAL TESTS—AUTHORITY OF CIVIL SERVICE COMMISSION.—Under section 106 of the charter of San Jose, the Civil Service Commission may require applicants for promotion to undergo mental and physical tests.

[8] ID. — PROMOTIONS — RULES AND REGULATIONS—DISCRETION.—The nature of the rules and regulations for promotion, which the

2.   See 23 Cal. Jur. 758; 25 R. C. L. 1004.
4.   See 18 Cal. Jur. 963.
7.   See 18 Cal. Jur. 995.

Civil Service Commission may provide in accordance with section 104 of the charter of San Jose, is left to the discretion of the commission, provided they do not have the effect of nullifying the fundamental principles which section 106 declares shall be followed in determining eligibility for promotion.

[9] ID. — FIRE DEPARTMENT — ELIGIBILITY OF FIREMAN FOR PROMOTION—PHYSICAL AND MENTAL FITNESS—JUDGMENTS—MANDAMUS. A judgment in a *mandamus* proceeding commanding the Civil Service Commission of the city of San Jose to certify all applicants for promotion in the fire department on their records of merit, efficiency, character and seniority, and to refrain from compelling applicants to undergo mental or physical tests in order to be eligible for promotion, will not be allowed to stand, for to do so would preclude the commission from causing any physical or mental tests to be made of applicants for promotion, the effect of which would be to compel the commission to certify as eligibles applicants whose records in the lower ranks of the service were excellent, even though it were manifest at the time of promotion that they were totally unfit physically or mentally to occupy the higher and more responsible position.

[10] ID. — SUBMISSION TO PAST EXAMINATIONS — JURISDICTION OF CIVIL SERVICE COMMISSION—REVIEW.—Where an applicant has submitted to past examinations for promotion, the action of the Civil Service Commission thereon is not open to review, nor can it be annulled for the reason that by virtue of section 106 of the charter of San Jose jurisdiction was vested in the commission to deal with the matter of promotions.

---

(1) 43 C. J., p. 609, n. 12 New.　(2) 36 Cyc., p. 1128, n. 57, 58. (3) 43 C. J., p. 832, n. 93 New.　(4) 43 C. J., p. 608, n. 90.　(5) 43 C. J., p. 609, n. 12 New.　(6) 43 C. J., p. 707, n. 25 New.　(7) 43 C. J., p. 609, n. 12 New, p. 832, n. 94.　(8) 43 C. J., p. 609, n. 12 New.　(9) 43 C. J., p. 832, n. 94 New.　(10) 43 C. J., p. 609, n. 12 New.

APPEAL from a judgment of the Superior Court of Santa Clara County. F. B. Brown, Judge. Reversed.

The facts are stated in the opinion of the court.

Archer Bowden, City Attorney, and Owen D. Richardson for Appellants.

Frank H. Benson and Harry E. Houser for Respondent.

·KNIGHT, J.—This is a proceeding in *mandamus* in which Theo. C. Haub, a member of the fire department of the city

of San Jose, obtained a judgment in the trial court commanding the Members of the Civil Service Commission of said city and the Secretary thereof to "certify all the applicants for promotion in the fire department of the city of San Jose on their records of merit, efficiency, character, conduct, and seniority, *and refrain and desist from compelling applicants for promotion in said department to undergo mental or physical tests in order to be eligible to promotion.*" (Italics ours.) From said judgment the Members of the Commission and the Secretary thereof have appealed, and present for determination questions relating particularly to the italicized portions of said judgment.

The city of San Jose is governed under a freeholders' charter, providing, among other things, for a "city manager" form of government and a system of civil service to be administered by a Commission, the powers and duties of said Commission, so far as they are in question here, being defined by the following charter provisions:

## "RULES

"104. The Commission, subject to the approval of the council, shall adopt, amend, and enforce a code of rules and regulations, providing for appointment and employment in all positions in the classified service, based on merit, efficiency, character and industry, which shall have the force and effect of law; . . .

## "EXAMINATION AND APPOINTMENT

"105. The Secretary shall provide examinations in accordance with the regulations of the Commission and maintain lists of eligibles of each class of the service of those meeting the requirements of the said regulations. Positions in the classified service shall be filled by the city manager from a list of the three persons, if there be that number, on the eligible list who have received the highest standing on examination; *provided,* that for good reason shown the city manager may reject all three and call for a new list.

## "PROMOTION

"106. The Commission shall provide for promotion to all positions in the classified service, *based on records of merit, efficiency, character, conduct, and seniority.*" (Italics ours.)

## "PROBATION PERIOD

"107. An appointment or promotion shall not be deemed complete until a period of probation not to exceed six months has elapsed, and a probationer may be discharged or reduced at any time within the said period of six months."

Pursuant to section 104, said Commission adopted and the city council approved a code of rules and regulations, one of which provided that positions in the classified service should be filled by the city manager from an eligible list certified by said Commission, said list to contain three names, or double that number if more than one place was to be filled. Another rule provided that vacancies should be filled by the promotion of applicants from the next lower rank and that "Promotional examinations shall be competitive."

The following are the facts: Haub became a member of said fire department some time prior to the year 1916, and on October 23, 1918, having successfully passed a civil examination, his name was placed upon the eligible list of the civil service in the grade of acting captain, where it remained for a period of two years, at which time said list lapsed by limitation of time. On December 31, 1920, however, under an emergency provision of said charter authorizing temporary appointments, the city manager appointed him lieutenant, to act until an eligible list was created by the Civil Service Commission or until said appointment was revoked; and he was still acting in that capacity at the time of the trial of this proceeding. On July 12, 1922, said Commission held a competitive examination to fill two lieutenancies, one being provisionally occupied by respondent. Eleven members of the department, including respondent, competed at such examination, the scope thereof as prepared by the Commission and the allotment of the total number of one hundred credits to be granted for a perfect examination being as follows: "Merit, efficiency, character, and conduct to be ascertained by written examination in the following subjects: Fire Fighting, Duties of Lieutenant, Fire Limits, Location of Fire Water Hydrants and Boxes, Arithmetic, Care of Equipment, and Fire Prevention (designated by the Commission as 'mental'), sixty credits; Physical examination, ten credits; merit, efficiency, character, and conduct (as shown by the records of the department), twenty

credits; Seniority (½ credit for each year of service or
fraction thereof, but not to exceed 10 credits), ten credits.''
The record of the examination shows that although re-
spondent registered a perfect score in the physical exami-
nation and was second highest in seniority and in ''merit,
efficiency, character, and conduct,'' as shown by the de-
partment records, the markings he received in the written
''mental'' examination caused a reduction of total credits
so that his name appeared fifth on the list of the six com-
petitors certified by said Commission, and the name of the
applicant who had served the shortest period of time in
the department—less than one year—appeared first on the
eligible list, his markings being the highest on the written
''mental'' examination.

Respondent's cause of action, as set forth in the amended
petition, was based upon allegations to the effect that al-
though said Commission had ''caused to be kept records
of merit, efficiency, character, conduct, and seniority'' of
the members of said department, it ''failed, neglected, and
refused to provide for promotion'' based upon such records;
but, on the contrary, had ''in the past, and unless restrained
. . . will in the future compel applicants for promotion
. . . to undergo certain mental and physicial tests,'' and
''will consider said tests in certifying members of said de-
partment for promotion''; also that said Commission had
in the past, and unless restrained, ''will in the future cer-
tify all applications for promotion on a basis of 100 points,
60 of which will be determined by said mental and physical
tests, and only 40 of which will depend upon the records
of the members of said department''; and that by reason
of the failure and refusal of said Commission ''to certify
the members of said department for promotion on their
records, and by reason of having compelled all applicants
for promotion to undergo certain mental and physical tests,''
respondent ''has not been certified as eligible to promotion
from fireman to lieutenant. . . . '' The trial court found
the above allegations to be true, and gave judgment in ac-
cordance with the prayer of the petition.

The main question upon which the parties seek a determi-
nation is whether under the charter provisions quoted said
Commission is empowered to subject applicants for promo-
tion to *competitive* examinations and may determine their

eligibility and grade therefrom. The answer to this question depends primarily upon the proposition of whether, as appellants contend, section 105, like section 106, applies to promotions, or whether, as respondent claims, section 105 governs in cases of original appointment only, and the Commission's power to deal with promotions is derived exclusively from section 106.

[1] Assuming that under the circumstances stated, the remedy of *mandamus* is available to respondent, a point made by appellants in the trial court but not stressed here, and assuming further that, such remedy being available, the pleadings herein raise the issue of the right to hold competitive examinations for promotions, we conclude that the Commission's power to determine eligibility for promotions is granted by section 106, to be exercised within the limitations thereof, but under rules and regulations adopted and approved pursuant to section 104 of said charter; and that the provisions of section 105 apply only to original appointment and employment in the service. This conclusion is grounded mainly upon the fact that the charter treats the subject of promotions separately, under a distinct subtitle, the distinction between original appointments and promotions being further emphasized in section 107 by the use therein of the disjunctive "or"—"An appointment or promotion," etc. [2] Moreover, if appellants' construction be adopted and it be held that section 105 was designed to cover the matter of promotions, then it must be held also that the enactment of section 106 was entirely unnecessary and constitutes surplusage, which we think may not be done in view of the rule of statutory construction "that some effect, if possible, must be given to every word, and certainly to every distinct provision of the act." (*Langenour* v. *French,* 34 Cal. 92; *Donlon* v. *Jewett,* 88 Cal. 530 [26 Pac. 370]; *Hannon* v. *Southern Pacific R. R. Co.,* 12 Cal. App. 350 [107 Pac. 335].)

[3] Turning then, to section 106, it would appear that the provisions thereof do not authorize the Commission to base its determination of eligibility for promotions upon competitive examinations. [4] A Civil Service Commission derives its power from the charter creating it, and may not exercise any power not directly given or necessarily implied from the prerogatives so conferred (*Cook* v. *Civil Service*

*Com.,* 160 Cal. 598 [117 Pac. 662]) ; and section 106 is
entirely void of any language which even inferentially jus-
tifies the Commission in requiring competitive examinations,
the language used therein being that the Commission shall
provide for promotions "based on records of merit," etc.
If in framing the charter it was intended that promotions
should depend in whole or in part on competitive examina-
tions, provisions from which such inference might be drawn
would doubtless have been incorporated in section 106 the
same as has been done in other civil service laws.   For ex-
ample, section 13 of the state civil service law provides
that "Promotions shall be based upon merit and competi-
tion and upon the superior qualifications of the persons,
promoted as shown by his records of efficiency." (Stats.
1919, p. 1346.)   Under the New York law, promotions are
made "according to merit and fitness to be ascertained as
far as practicable by competitive examinations." (*Hale*
v. *Worstell,* 185 N. Y. 247 [113 Am. St. Rep. 895, 77 N. E.
1177].)   The charter of the city and county of San Fran-
cisco declares that "The commission shall provide for pro-
motion in the classified service on the basis of ascertained
merit and standing upon examination. . . . All examina-
tions for promotion shall be competitive among such mem-
bers of the next lower rank . . . as desire to submit to
such examinations." In Los Angeles the charter reads
(sec. 237) : "The commission shall by its rules provide for
the promotion of such classified civil service on the basis
of ascertained merit and seniority in service and examina-
tion. . . . All examinations for promotion shall be competi-
tive among such members of the next lower class as desire
to submit themselves to such examinations. . . . " The
charter of the city of San Diego (sec. 5, art. XI) requires
that the Commission shall provide rules "for promotion
based upon competitive examination and records of effi-
ciency, character, conduct, and seniority. . . . " And the
Oakland charter reads (sec. 97, Stats. 1919, p. 1366) : "Pro-
motions in the fire department shall be based on ascer-
tained merit, seniority of service, and standing upon com-
petitive examinations. . . . " It will therefore seem that
in the framing of the charter before us, the requirement
of competitive examinations for promotion in the classified
service was purposely omitted.

[5] Appellants make the point that section 106, to be operative, must necessarily depend upon the provisions of section 105, because the latter section contains the only charter provision granting power to the city manager to make appointments to positions in the classified service. Section 104 of the charter declares, however, that said Commission shall adopt, subject to the approval of the council, "a code of rules and regulations providing for appointment . . . in the classified service . . . which shall have the force and effect of law," and since the rule hereinabove referred to, embodying the grant of power mentioned, has been adopted and approved pursuant to said section, the authority to appoint does not appear to be lacking.

[6] The fact that said Commission has. operated for a number of years under the interpretation appellants are contending for here cannot be held to affect the present legal situation for the reason that the exercise of powers by city officers, in excess of their authority, for a great length of time, will raise no presumption of a grant to the city of such powers. (*Vernon Irr. Co.* v. *City of Los Angeles,* 106 Cal. 237 [39 Pac. 762].) To the same effect is the case of *City of Corona* v. *Merriam,* 20 Cal. App. 231 [128 Pac. 769].

[7] We cannot agree, however, with respondent's contention that under the provisions of section 106 said Commission may not require applicants for promotion to undergo mental and physical tests; and in view of the injunctive relief granted in the judgment to that effect, said judgment must be reversed.

[8] The language used in the forepart of said section 106 is: "The Commission *shall provide* for promotions . . . " (italics ours), which, reasonably construed, means that it may in accordance with section 104 provide rules and regulations for promotion; and that being so, the nature of those rules and regulations are left necessarily to the discretion of said Commission, providing they do not have the manifest effect of nullifying the fundamental principle which said section 106 declares shall be followed in determining eligibility for promotion.

As to the extent of the discretion thus vested in a civil service commission, we quote from *Pratt* v. *Rosenthal,* 181 Cal. 158 [183 Pac. 542], as follows: "It is a well-established

proposition that a commission with the powers conferred
upon the Civil Service Commission in the examination of
applicants for public employment has a wide discretion
with regard to the manner of performing its duties and
exercising its powers. . . . 'Courts should let administra-
tive boards and officers work out their problems with as
little judicial interference as possible. They may decide
a particular question wrong—but it is their question.
Such boards are vested with a high discretion, and its abuse
must appear very clearly before the courts will interfere.'
(*Maxwell* v. *Civil Service Com.*, 169 Cal. 339 [146 Pac.
869].)'' Upon the same subject it is said in Dillon on
Municipal Corporations (volume 1, section 339) that when
the power is given to the members of such Commission ''to
test the qualifications of applicants for public office the
method of such examination with the result arrived at,
necessarily rests within their discretion and judgment
upon the examination had, and is not a judicial determina-
tion of any question presented to them in such a sense that
it may be reviewed by the courts on *certiorari* or *mandamus*
or otherwise''; and in the case of *Cook* v. *Civil Service
Com.*, 160 Cal. 589 [117 Pac. 663], it is held that the
conducting by the civil service of an examination for pro-
motion of captains in the fire department of that city to
the rank of battalion chief, and the declaration by them
of the percentages attained by the various candidates for
promotion, were not the exercise of a judicial function, and
their action in such matters could not be reviewed on
*certiorari;* that having jurisdiction to act, and not acting
judicially in holding examinations, said Commission, even
if acting unfairly, could not have its actions subjected to
examination by a writ of review.

[9] ''Physical fitness and health are prime requisites
for a fireman, whatever his work in the service'' (*Maxwell*
v. *Civil Service Com., supra*), but under the terms of the
judgment rendered herein, if allowed to stand, said Com-
mission would be precluded from causing any physical
or mental tests whatever to be made of applicants for
promotion, the effect of which would be to compel said
Commission to certify as eligible applicants whose records
in the lower ranks of the service were excellent, even though
it were manifest at the time of promotion that said appli-

cants were totally unfit physically or mentally to occupy the higher and more responsible position.

[10] Regarding the argument made by appellants as to the effect of an adverse ruling herein on the question of competitive examinations and as to the possible consequences which might flow from any judgment to be hereafter rendered by the trial court in this proceeding, it may be said that according to the allegations of the amended petition herein, the purpose of this proceeding is not to annul any past transaction of said Commission, nor has it been directed toward any particular threatened action in the future; and in view of the foregoing authorities, it would seem clear that where an applicant has submitted to past examinations for promotion, the action of the Commission thereon is not open to review, nor can it be annulled for the reason that by virtue of said section 106 jurisdiction was vested in said Commission to deal with the matter of promotions.

For the reasons hereinabove stated, the judgment is reversed.

Tyler, P. J., and Cashin, J., concurred.

A petition by respondent to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on March 1, 1927.